FRANCISCO BARREIRO-GARCÍA, Plaintiff and Appellee, *v.* PORTO RICO RAILWAY, LIGHT & POWER COMPANY, Defendant and Appellant.

No. 3321. Argued May 28, 1925.—Decided February 19, 1926.

*J. H. Brown* and *Clemente Ruiz Nazario* for the appellant. *H. Torres Solá* for the appellee.

Mr. Justice Hutchison delivered the opinion of the court.

Defendant in a proceeding for an injunction to compel the restoration of the possession of real estate appeals from an adverse judgment and says:

"1.—The court erred in not admitting evidence to prove the averments of the counter-complaint.

"2.—The court erred in not deciding plaintiff's motion to strike the counter-complaint.

"3.—The court erred in rendering judgment for plaintiff, ignoring the counter-complaint filed by appellant, and without determining whether or not it would lie."

The answer contained general and specific denials of the facts alleged in the complaint.

The cross-complaint alleged that in March, 1913, plaintiff segregated and conveyed to defendant under covenant of warranty a certain parcel of land; that thereafter the said vendor built a house upon the unsold portion of the original tract; that in October, 1923, defendant surveyed the parcel purchased in 1913, proceeding in accordance with the calls contained in the deed; that thereupon defendant became convinced that Barreiro had added a wing to his house, a part of which, as well as an out-house, was erected upon the land of defendant; that defendant had demanded the removal of such out-house and the demolition of the part of the said dwelling standing upon defendant's land and that Barreiro had declined to accede to such demand; that in November, 1923, defendant proceeded to fence the parcel acquired in 1913 in accordance with the survey made in 1923 and found it impossible to complete the enclosure on the east by reason of the usurpation and trespass committed by the cross-defendant in so far as the space occupied by the wing of said house was concerned, the out-building having been included within such enclosure.

The prayer was for a decree ordering the removal from the land of defendant of the buildings erected thereon by the cross-defendant, especially the wing and out-building

76

aforesaid, and enjoining any interference with the fencing of cross-complainant's land or with the free use and possession of such property by cross-complainant, together with an order for a writ of possession; and for costs, disbursements and attorney's fees.

In support of the first proposition contained in the assignment of errors appellant refers us to pp. 19, 20, 23, 24, 29 and 30 of the stenographic record.

 Turning to pages 19 and 20 we find the cross-examination of the witness Barreiro which proceeds as follows:

Attorney for defendant: You say that you are the owner of a property?—Plaintiff: He has said that he is in possession of it.— The Court: I want you to bear in mind the kind of action before us. The court is not going to decide upon any question of title; what we are trying to do is to protect the physical possession. If he was not in possession you may contradict him, but if he was then I will protect him.—Witness testifies to the effect that the property that he says he possesses in Río Piedras is a part of 1627 meters. Defendant: Of 1627 or 1697?—Witness: Well, whatever you say.— Defendant: To whom did you sell the remainder of that property? —Witness: I sold five meters. . . . .—Plaintiff: It is immaterial to whom he sold it.—The Court: But supposing that he sold it, if he is in the material possession.—Defendant: We want to show by this same witness the adverse possession by the company.—The Court: Do not answer.—Defendant: Exception.—Defendant: Did you sell any part of that property of 1690 meters?—Plaintiff: I object, because we are not discussing sales.—The Court: The objection is sustained.—Defendant: Exception.

Plaintiff's title to what remained after the segregation and sale to the defendant in 1913 was not questioned, but admitted in the cross-complaint. No exception was taken to the ruling implied in the statement made by the trial judge at the beginning of this cross-examination excluding questions of title, at least in so far as the title of plaintiff was concerned. Apparently the judge was left under the impression that counsel for defendant acquiesced in the views expressed in so far as they indicated anything beyond this as

to the general lines along which the investigation was to be conducted.

"The adverse possession of the company" was a very vague response to the question of the presiding judge as to the effect of actual possession notwithstanding the sale. No reason was given for the exception taken to the two rulings that next ensued. Conceding for the sake of argument that defendant was entitled to prove essential averments of the cross-complaint by cross-examination of plaintiff, regardless of the scope of the direct examination, yet we think the trial judge was also entitled to some intimation as to what was in the mind of counsel.

Obviously, what the court below had in mind was the issue arising from the complaint and answer. The cross-complaint apparently had been entirely forgotten and at no time throughout the trial was the trial judge reminded of its existence.

The testimony of the first witness for the defendant covers pages 23 to 25 of the transcript and is as follows:

That his name is E. B. Roberts; that he lives in Bayamón and is a civil engineer by profession. That he is the chief engineer of the Porto Rico Railway, Light & Power Company; that he has had occasion to measure and examine the property belonging to the Porto Rico Railway, Light & Power Co. in Río Piedras.—Defendant: From whom did the Porto Rico Railway, Light & Power Co. acquire that property?—Plaintiff: I object.—The Court: The objection is sustained.—Defendant: The Porto Rico Railway, Light & Power Co. is in possession of that property?—Plaintiff: We object because that is a leading question.—The Court: The objection is sustained.— Defendant: In what capacity does the Porto Rico Railway, Light & Power Co. hold that property?—Witness: It possesses it as owner.— Plaintiff: We move to strike that, because it has not been shown to what property he refers.—The Court: We do not know yet to what property you are referring.

The witness says that he knows the property referred to in this suit.

Defendant: (To the witness) Do you know if the property which you say belongs to the Porto Rico Railway, Light & Power Co. is

adjacent to that property?—Plaintiff: We object; there is no foundation whatever.—The Court: We do not know to what property you refer, the witness has not identified any.—Defendant: (To the witness)—Please describe the property that the Porto Rico Railway, Light & Power Co. owns in Río Piedras, and to which you have referred. I would like to refresh the memory of the witness by a plat which has been made.—The Court: The question in issue is that of the possession of the property that is described in the complaint.—

The witness then states that he knows the property belonging to Mr. Barreiro, mentioned in the complaint; that at no time has the Porto Rico Railway, Light & Power Co. tried to dispossess Mr. Barreiro of that property; and that the Porto Rico Railway, Light & Power Co. has never disturbed Barreiro's possession of that property. —Attorney for defendant: Has the Porto Rico Railway, Light & Power Co. ever done any act tending to disturb the quiet and peaceable possession which Mr. Barreiro is entitled to have over that property?—Witness: We have never interfered with Mr. Barreiro's property.—

Upon being asked by the court if he knew whether the company had ordered the fence to be moved toward the land belonging to Mr. Barreiro, he answered: Yes, Sir, I gave that order.—Attorney for plaintiff: Was that fence within the property of Mr. Barreiro, or within the property of the company?—Witness: No, Sir.—The Court: Who was in the possession of the land enclosed by the old fence, in the material possession of it?—Witness: Barreiro had the possession of the property.—

In answer to questions by the attorney for defendant, witness testified as follows:—As to whether or not he knows if the Porto Rico Railway, Light & Power Co. was in the actual possession of the land inclosed by the iron railing after it was moved, he knows that it had the title, but does not know who was in actual possession; that he believes that the Porto Rico Railway, Light & Power Co. has been and is at present in the possession of all its properties, but that they have not disturbed the possession of the persons who live in that house. That they have placed a fence in front of the house, but that it does not disturb the people who live in the house.

Questioned by attorney for plaintiff, witness testified as follows: That the fence divides the house into two parts; that it may be that besides the house there were some plants growing on the land. Being asked by the judge, witness says that if there were plants in that place he did not know who had planted them.

Answering questions of attorney for plaintiff, witness said: That he does not know if the Porto Rico Railway, Light & Power Co. ever planted corn there. That he knows that the Porto Rico Railway, Light & Power Co. owns that place, because he was given a title in order to fix the landmarks and boundaries of the property. As to who was in possession of the land when witness went there to mark the boundaries, he said that the only thing that he saw there was a house, the outstanding wing of a house; that he does not remember having seen corn there; that he put some stakes there; and that he did not notice what was to be found on both sides of the fence when he ran the line.

Upon being asked by attorney for defendant if there was any fence before the fence in question was built, the witness answered: There was none at the time that I made the survey.

On pages 29 and 30 Sergio Gelpí, an attorney and defendant's claim agent, closes the testimony for the defense in this wise:

Plaintiff: Here no compromise or obligation between plaintiff and defendant has been alleged; and this evidence seems to show some agreement that is not alleged in the answer.—The Court: Continue.—

Witness testified that they were speaking about the house that was found on the land of the company, according to the deed, as witness understands it; that witness explained this to Barreiro, and he agreed to the following: That the company would give him sufficient time to remove the house and the privy, a little house that was found somewhat further within the land of the company; that they came to a little agreement with regard to the house and, as a part of it was within the property, Mr. Barreiro said that it would be difficult for him to remove it, because it was already built, and that he wanted the company to re-sell to him the strip occupied by the house, the land upon which the house stood; that then witness replied that he would have to consult the manager of the company and Mr. Brown, attorney for the company, in regard to the matter, but that in the meanwhile witness would allow him two months within which to remove the part of the house that was within the property, and the privy.

Defendant: Do you know if the Porto Rico Railway, Light & Power Co. was in possession of that land?—Plaintiff: We believe that this evidence refers to a supposed agreement that is not alleged in the answer.—The Court: Yes, that is a matter of title, not of possession.—Defendant: Was the Porto Rico Railway, Light & Power

Co. in possession of its property, of the property that it was trying to fence?—Witness: I personally do not and did not know the place previously, but according to what was stated to me by. . . . .—Plaintiff: I object, because that is hearsay.—Defendant: Do you know from whom it was that the Porto Rico Railway, Light & Power Co. acquired this property?—Plaintiff: I object. It does not matter from whom the company acquired it.—The Court: The objection is sustained.

In these two extracts we find no indication of any clearly defined intention on the part of the trial judge to exclude any evidence in support of the averments of the cross-complaint. On the contrary, the repeated objections by counsel for plaintiff and intimations by the court to the effect that defendant was attempting to prove matters not mentioned in the answer and concerning a parcel of land that had not been identified should have suggested to counsel for defendant the course which, had it been followed from the moment of the first objection if not from the moment that the first witness for defendant took the stand, might have obviated all difficulty.

The deed of conveyance, upon which the whole cross-complaint is based, was never offered in evidence and, as already pointed out, no reference was made at any time by counsel for defendant to the fact that the cross-complaint had not been stricken.

The brief for appellant explains this fatal omission as due to the inexperience and consequent confusion and embarrassment of the young attorney who conducted the case for defendant. This is an extenuating circumstance which is not without its appeal to the sympathies of any one who can remember what a lawyer rarely forgets, namely, his first appearance as general manager and sole conductor of a case in court. Extenuating circumstances, however, can not alter the rule that questions intended to be urged upon appeal must be presented to and passed upon by the court below.

The first and primary proposition submitted by appellant can not be sustained for the reason that it has no solid foundation in the facts disclosed by the record.

■ The motion to strike the cross-complaint was made orally at the beginning of the trial. Both parties acquiesced in the announcement that the question would be taken under advisement to be decided after hearing the evidence. The failure either to overrule the motion or to order the cross-complaint to be stricken after the case was submitted is not shown to have prejudiced appellant in any substantial right.

Defendant, of course, had a right to insist upon a decision disposing in some way of the cross-complaint. Technically, the judgment ought to be reversed unless the same can be sustained intact in so far as the only issue actually determined is concerned, and the case remanded for further proceedings with a view to disposing of the cross-complaint. The only other theory upon which the neglect of the court below to dispose of the case as a whole could be justified would be that defendant had abandoned entirely the issues tendered by its cross-complaint. We have already gone about as far as we are disposed to go along this line, and the propriety of a reversal in part and an affirmance in part seems rather more than doubtful.

Nevertheless, the brief for appellant frankly concedes that the evidence adduced at the trial affords no foundation for a judgment in accordance with the prayer of the cross-complaint. The only judgment that the district court could have rendered on the merits of defendant's counter-claim would have been a dismissal of cross-plaintiff's action. The error in not entering such a judgment, which, by appellant's own admission, could not have been assailed as contrary to the evidence and which, if affirmed, might or might not be pleaded in a subsequent action as *res judicata,* can hardly be regarded as prejudicial.

■ The fourth contention of appellant is characterized in the brief and briefly discussed as a sequel to those preceding it. In so far as not disposed of by what has been said already, it does not demand serious consideration.

Were we prepared to say that a ruling sustaining plain-

tiff's motion would have been reversed, then perhaps we should be inclined to give appellant the benefit of whatever doubt there may be as to the soundness of any of the foregoing conclusions, and to order a new trial.

But counsel concede that the question arising from the filing of the cross-complaint herein is both novel and complicated. The brief concludes with a promise to submit a memorandum. Although the hearing was postponed at the instance of appellee and the case was submitted more than a year after the brief for appellant was filed, that memorandum was never presented.

Cases may occur wherein the refusal to entertain a cross-complaint would amount to a violation of the general principles of equity practice and a denial of substantial justice. Perhaps even in the instant case the court might have announced that it would first try and determine the issues presented by the complaint and answer as in a proceeding for a temporary restraining order, postponing the hearing and decision of the questions raised by the cross-complaint to a later date. Indeed appellant suggests that some such idea in the mind of the court may be the logical explanation of its action. But appellant also insists that such a course would be contrary to all precedent and it is by no means clear that the case was tried upon any such theory.

It may be also that a vendee of plaintiff holding under a warranty deed in certain circumstances would have some advantages not accruing to a defendant deriving title from some other source, but appellant draws no such distinction, nor in so far as a bare boundary dispute is concerned do we perceive any satisfactory basis for such a view.

If a constructive possession or more legal or equitable right to possession may be made the basis of a cross-complaint, then we can not consistently say that such matters do not constitute a valid defense when set up in the answer. And so to hold would be idle if defendant by the simple device of resorting to a cross-complaint can convert the original pro-

ceeding into a controversy over the ultimate possessory rights of the parties.

The adoption of appellant's theory in the case at bar would be utterly subversive of the doctrine heretofore announced and uniformly adhered to by this court and summed up anew in the recent case of *Cividanes* v. *Oben et al.*, 34 P.R.R. 767.

Incidentally, the establishment of such a general rule, unless restricted within narrower limits than at this time appear to be logically possible, would make a dead letter of the legislative enactment whereby the restorative interdicts of the Roman Law were revived and replaced upon our statute books.

All thing considered, and especially the circumstance that defendant had ample opportunity, if not to prove the facts alleged in its cross-complaint, at least to tender the evidence in support thereof and thus obtain a definite ruling as to its admissibility in the light of such averments, and neglected properly to improve such opportunity, we are constrained to hold that the judgment appealed from must be affirmed.